J-A19023-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICK LEE | : | |
| | : | |
| Appellant | : | No. 1626 MDA 2023 |

Appeal from the Judgment of Sentence Entered October 19, 2023
In the Court of Common Pleas of Columbia County Criminal Division at
No(s): CP-19-CR-0000201-2020

BEFORE: PANELLA, P.J.E., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LANE, J.: **FILED: NOVEMBER 21, 2024**

Rick Lee ("Lee") appeals from the judgment of sentence imposed following his bifurcated trial convictions of driving under influence of alcohol/general impairment ("DUI") and driving while operating privilege is suspended by a person who refused a breath test ("DUS").[1] We affirm.

The Commonwealth charged Lee with DUI and DUS. The charges proceeded to a bifurcated trial, where the Commonwealth first presented evidence before a jury with respect to the DUI charge. Hemlock Township Police Officer Henry Roote ("Officer Roote") testified to the following: one night in December 2019, he was on patrol when he observed "an older model 'bluish

---

[*] Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S. § 3802(a)(1), 1543(b)(1.1)(i).

purple' truck" with an Oregon license plate. Trial Court Opinion, 1/16/24, at 4 (record citations omitted). "The truck was a distinctive 'odd' color and was known to Officer Roote as belonging to, and 'operated by,'" Richard Harvey — whom the officer identified at trial as Lee. *Id*. Officer Roote began following Lee because he knew him and knew his Pennsylvania driver's license was suspended. *See id*. at 5.

> [Lee] attempted to navigate a left turn, [but] "overcompensated," and . . . had to back up and start again to make the turn[,] making an "S" movement. Officer Roote could see [Lee's] face in the side view mirror and was able to identify the driver as [Lee] from prior familiarity with [Lee. Lee's] face was illuminated by the lights of a nearby Exxon station. [Lee] attempted to turn right into the Exxon, but cut over the double yellow line, then overcompensated again, requiring [him] to cut hard to the right to turn into the Exxon. . . .

*Id*. (record citations omitted).

Lee stopped his vehicle at a gas pump. Officer Roote parked behind him, activated his lights, and effected a vehicle stop. Lee exited his vehicle and walked five to eight feet toward Officer Roote. *See* N.T. Jury Trial, 9/18/23, at 42. Officer Roote described Lee as having "an unsteady gait," wherein "[h]e would take a step, then almost catch himself in . . . a stumbling motion." *Id*. at 41-42. Lee was also "yelling something," and his speech was slurred and "mumbling," with his "words running together, pause, [and] not the normal rhythmic tone as you speak [*sic*]." *Id*. Officer Roote testified that six months earlier, he talked to Lee and observed him walking, and on this evening, his speech and walk were different from the prior interaction. *See*

- 2 -

*id*. at 45. Officer Roote directed Lee to return to his vehicle and called Officer Craig Johnson for assistance.

Officer Johnson testified to the following at trial. He was certified to administer field sobriety tests and "operate the DUI Booking Center breath testing machine." *Id*. at 70-71. He arrived on the scene to assist Officer Roote. "Officer Johnson identified [Lee] at trial as 'Mr. Harvey,' the person he encountered at the scene." Trial Court Opinion, 1/16/24, at 7. Officer Johnson explained to Lee he would conduct a field sobriety test, specifically the "walk and turn test." N.T., 9/18/23, at 73, 76. Lee "was asked if he had any medical conditions that would affect his performance and [he] said "no.'" Trial Court Opinion, 1/16/24, at 7-8. Officer Johnson demonstrated the test — walking nine steps, placing one foot in front of the other with the heel touching the other foot's toe, turning, and walking nine steps back. *See* N.T., 9/18/23, at 74. During this time, the officers asked Lee to "put [his] arms down" and to "pay attention," while Lee stated numerous times, "Let's just get this over with." *Id*. Officer Johnson testified this behavior indicated a "a lack of attention." *Id*. at 77. In performing the test, Lee "showed signs of impairment by using his arms to steady his walk" and stepping with more than six inches between his heel and the toe of the other foot. *Id*. at 76. Officer Johnson then requested Lee to perform a "one-legged stand test," but Lee refused. *Id*. at 78.

At this time, the officers took Lee into custody and transported him to the DUI Booking Center. Officer Roote testified to the following. He requested Lee to submit to a breath test and read aloud a "DL-26" form for consent for the test. *Id*. at 48. Lee refused, stating, "I'm not doing this bull[—] test;" he also refused to sign the line indicating that he was refusing the breath test. *See id*. at 49-50. Officer Roote described Lee at this time as "upset, abrasive, [and] somewhat angry towards the police officers." *Id*. at 51.

Finally, Officer Roote testified he had been a police officer for thirteen years and has interacted with "hundreds" of people under the influence of alcohol. *Id*. at 37-38. Officer Johnson had been a police officer for seven years, and previously was employed at the Federal Bureau of Prisons for twenty years. *See id*. at 70. Officer Johnson had experience interacting with intoxicated inmates and, as a police officer, administered more than a hundred field sobriety tests, although "[n]ot all of those tests have showed impairment." *Id*. at 71, 72. Both officers opined that, based on their training and experience, Lee was under the influence of alcohol and incapable of safe driving. *See id*. at 52, 79-80.

Lee did not testify in his own defense, but presented an expert witness, Lawrence Guzzardi, M.D., in the fields of emergency medicine, emergency neurological care, and medical toxicology. Dr. Guzzardi testified that he reviewed Lee's prior medical records — which Lee also submitted into evidence — interviewed Lee over the telephone, and administered neurological tests

over a video call. *See id*. at 129. Dr. Guzzardi testified that Lee "had brain surgery in 2005[, which] created a neurological impairment that caused a speech impediment and difficulty walking." Trial Court Opinion, 1/16/24, at 6 n.2. Dr. Guzzardi also opined, to a "[h]igh degree of medical certainty," that Lee would have had "a very high probability of not being able to successfully complete the" "walk and turn test." N.T., 9/18/23, at 152.

The jury found Lee guilty of DUI, and made a special finding that he refused to give a breath sample for testing.[2]

Meanwhile, when the jury retired to deliberate the DUI charge, the parties presented evidence to the trial court, sitting as finder of fact, on the summary DUS charge. Officer Roote testified that when he conducted the vehicle stop, Lee provided an Oregon driver's license, bearing the name Rick Lee. N.T., 9/18/23, at 224. Defense counsel acknowledged that Lee was previously known as Richard Lee Harvey, and presented a 2010 Florida certified name change form. *See* N.T., 9/18/23, at 225; *see also* Verdict Slip as to Summary Offense and Opinion ("DUS Opinion"), 9/22/23, at 2.

---

[2] The general impairment subsection of the DUI statute prohibits an individual from driving a vehicle with a blood alcohol concentration of 0.08% through 0.10%. *See Commonwealth v. Giron*, 155 A.3d 635, 638 (Pa. Super. 2017). However, when an individual refuses a blood or breath alcohol test and is later convicted of DUI-general impairment, his conviction is subject to higher grading and he is subject to greater punishment. *See* 75 Pa.C.S.A. §§ 3803, 3804(c).

The Commonwealth presented Lee's certified driving record, which the trial court summarized as showing the following: [3] Lee's Pennsylvania driver's license has been suspended since August 2003. *See* Trial Court Opinion, 1/16/24, at 10. Lee has incurred seven DUI convictions, as well as other violations, and his driver's license has been continuously suspended without restoration. *See id*.; *see also* DUS Opinion, 9/22/23, at 2. Pertinently, the certified driving record included entries that official notices of the suspensions were mailed to Lee. *See id*.

Defense counsel denied that Lee received notices of the license suspensions, arguing that the address attributed to him on the Pennsylvania certified driving record did not match the Oregon address on his Oregon driver's license. N.T., 9/18/23, at 227. Defense counsel further averred that due to Lee's possession of a "valid" Oregon license, "he could not have [had] actual notice that he was suspended from driving privileges." *Id*. The trial court asked counsel who bore the burden of notifying the Pennsylvania Department of Transportation ("PennDOT") of Lee's address change, but defense counsel replied she did not know. *See id*. at 229. Four days later, on September 22, 2023, the trial court found Lee guilty of DUS.

---

[3] The trial exhibits were not included in the certified record transmitted on appeal. Nevertheless, Lee has not disputed the veracity of the trial court's description of his certified driving record.

On October 19, 2023, the trial court imposed sentence as follows: (1) for DUI, a standard sentencing-guideline range term of fifteen to thirty months' imprisonment in state prison; and (2) for DUS, a $1,000 fine. Lee filed a timely post-sentence motion, which challenged the sufficiency and weight of the evidence. The trial court denied relief, and Lee filed a timely n notice of appeal. Both Lee and the trial court have complied with Pa.R.A.P. 1925.

Lee presents the following issues for our review:

1. Whether the evidence was insufficient to convict [Lee] of [DUI]?

2. Whether the [trial] court erred in denying [Lee's] post-sentence motion that the verdict was against the weight of evidence when considering all testimony?

3. Whether the trial court erred in finding that [Lee] was driving under a suspended driver's license when he had a valid Oregon license in the name of Rick Lee and there was no testimony as to how officers concluded [Lee's] name was Richard Harvey and he had a suspended Pennsylvania driver's license[?]

Lee's Brief at 3 (unnecessary capitalization omitted).

In his first issue, Lee avers the evidence was insufficient to support his conviction of DUI. We consider the applicable standard of review:

"Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is *de novo* and our scope of review is plenary." "In assessing [a] sufficiency challenge, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that the Commonwealth proved [each] element of the crime beyond a reasonable doubt." "The evidence need not preclude

every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented."

***Giron***, 155 A.3d at 638 (citations omitted).

The DUI/general impairment statute, under which Lee was convicted, provides:

An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(a)(1). Under this subsection, "[t]here is no requirement that videotape or physical evidence be presented at trial. Instead, police officers' testimony is sufficient to prove the elements of DUI-general impairment." ***Giron***, 155 A.3d at 638. Additionally, we note that when a defendant is charged with any DUI violation under section 3802,

the fact that the defendant refused to submit to chemical testing . . . may be introduced in evidence along with other testimony concerning the circumstances of the refusal. No presumptions shall arise from this evidence but it may be considered along with other factors concerning the charge.

75 Pa.C.S.A. § 1547(e).

On appeal, Lee maintains that Officer Roote "testified that he did not smell alcohol on [Lee's] breath, [nor] see red eyes, . . . the vehicle swerving[ or] braking unusually, . . . stopping . . . in the middle of the lane, . . . violating other lanes, or failing to use headlights." Lee's Brief at 11. Lee further contends there was no evidence that he admitted to consuming alcohol. Lee concludes the totality of the evidence was insufficient to show beyond a

reasonable doubt that he consumed alcohol, which rendered him incapable of safely operating a motor vehicle.[4]

We consider the trial court's analysis:

The evidence . . . was substantial and sufficient to create a question of fact for the jury. [Lee] was driving erratically[,] staggering[,] and slurring his speech. The officers both opined that, based upon their training and experience, [Lee] was unable to safely drive due to his consumption of alcohol. The lack of an odor of alcohol does not change these facts, and it was left to the defense to argue that fact to the jury if [it] wanted to. The evidence was sufficient to create a question of fact for the jury and the jury found against [Lee].

Trial Court Opinion, 1/16/24, at 14.

After review of the record, and viewing the evidence in the light most favorable to the Commonwealth, we similarly conclude the jury could have

_____

[4] Lee also acknowledges Officer Roote's testimony that he had "an unsteady gait and a stumbling motion," but cites his expert witness' testimony that a prior brain surgery caused him neurological impairment. Lee's Brief at 11-12. This argument goes to the weight, not the sufficiency, of the evidence. We remind counsel:

[A] sufficiency of the evidence review does not include an assessment of credibility of testimony offered by the Commonwealth. Instead, such arguments are more properly characterized as challenges to weight of evidence. [*See*] ***Commonwealth v. W.H.M., Jr.***, . . . 932 A.2d 155, 160 (Pa. Super. 2007) (explaining a claim that the jury erred in crediting a victim's version of events over that of the defendant goes to the weight, not to the sufficiency of the evidence).

***Commonwealth v. Juray***, 275 A.3d 1037, 1043 (Pa. Super. 2022) (some citations omitted). ***See also id***. at 1046 (explaining that a claim that the verdict is contrary to the weight of the evidence concedes there is sufficient evidence to sustain the verdict).

found the Commonwealth proved each element of DUI beyond a reasonable doubt. *See* 75 Pa.C.S.A. § 3802(a)(1); *see also Giron*, 155 A.3d at 638. On appeal, Lee wholly ignores the uncontradicted testimony by the police officers, that: (1) Officer Roote observed Lee driving erratically, by "overcompensating" when turning and crossing over the double yellow line in making another turn; (2) in an interaction with Officer Roote six months earlier, Lee did not have the "slurred speech" and "unsteady gait" that were exhibited during the traffic stop; and (3) Lee showed signs of inattentiveness when Officer Johnson attempted to demonstrate the field sobriety test; and (4) Lee refused to consent to a breath test. *See* Trial Court Opinion, 1/16/24, at 5-6; *see also* 75 Pa.C.S.A. § 1547(e) (providing that evidence of a defendant's refusal to submit to a chemical test may be considered). Furthermore, despite Lee's explanations for his deficient performance of the field sobriety test, the jury was free to consider Officer Johnson's testimony, that he showed signs of impairment. The officers' testimony alone was sufficient to support a conviction of DUI. *See Giron*, 155 A.3d at 638. The jury was free to believe all, part, or none of this evidence, and we do not disturb its finding of guilt. *See id*.

In his second issue, Lee avers the trial court erred in denying his post-sentence motion claim that the DUI verdict was against the weight of the evidence. This Court has explained:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict

is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the [trial] court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Juray*, 275 A.3d at 1047 (citation omitted).

A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Id*. at 1046-47 (citation omitted).

In challenging the weight of the evidence for his DUI conviction, Lee avers:

Officer Roote did not . . . follow [him] because of erratic driving, speeding, crossing lanes, vehicle equipment violations[, but instead] because of the odd color [of his truck] and he fact that the officer believed [him] to be driving, and knew from prior contact that [he] had a suspended license.

Lee's Brief at 13. Furthermore, Lee cites Dr. Guzzardi's testimony that he had brain surgery in 2005, which "created a neurological impairment that caused

- 11 -

difficulty walking and a speech impediment," and "would make it impossible for [Lee] to complete any standardized field sobriety testing." *Id*. at 11-12.

After review of the record, we determine that no relief is due. First, we reject Lee's argument concerning Officer's Roote reason for following him — that the officer recognized the vehicle and the driver as a person whose driver's license was suspended. The Commonwealth did not claim this evidence established the elements of DUI. Relatedly, Lee ignores that, regardless of the initial reason for following him, Officer Roote immediately observed him driving erratically.

Second, we reject Lee's implicit argument that, with respect to his performance of the field sobriety test, the jury should have credited Dr. Guzzardi's testimony over that of the police officers. The trial court aptly observed that the jury was free to weigh any competing testimony and to find Dr. Guzzardi not credible. **See Giron**, 155 A.3d at 638 (providing that the fact-finder is free to believe all, part, or none of the evidence); **see also** Trial Court Opinion, 1/16/24, at 6 n.2. Additionally, the jury was free to consider Officer Roote's uncontradicted testimony that six months earlier, Lee did not exhibit slurred speech or unsteadiness in walking. **See id.** We reiterate that on appeal, our task is not to review the underlying question of whether the verdict is against the weight of the evidence, but instead to review the discretion of the trial court. **See Juray**, 275 A.3d at 1047. We conclude the trial court properly denied relief on Lee's claim.

In his final issue, Lee asserts the trial court erred in finding he was driving under a suspended driver's license. We address his multiple, brief arguments *seriatim.*

First, Lee maintains he had a valid Oregon driver's license. The DUS statute provides, in pertinent part:

> Except as provided in subsection (b), any person who drives a motor vehicle on any highway or trafficway of this Commonwealth after the commencement of a suspension, revocation or cancellation of the operating privilege ***and before the operating privilege has been restored*** is guilty of a summary offense[.]

75 Pa.C.S.A. § 1543(a) (emphasis added).

The trial court found that even if Lee possessed a valid Oregon driver's license, it would not subvert the prohibition on him from driving in Pennsylvania. The trial court also pointed out the certified driving record showed that Lee surrendered his driver's license in August 2003, when his license was suspended, and there has been no restoration of his license. ***See*** DUS Opinion, 9/22/23, at 2.

After review, we similarly conclude that no relief is due on Lee's sufficiency challenge. Subsection 1543(a) clearly provides that once an individual's Pennsylvania license has been suspended," he may not drive on any trafficway in Pennsylvania until his Pennsylvania operating privilege "has been restored." ***See*** 75 Pa.C.S.A. § 1543(a). Lee presented no evidence at trial to dispute the Commonwealth's evidence that he surrendered his Pennsylvania license and has not had it restored.

Second, Lee cites Officer Roote's trial testimony that he believed the driver of the vehicle was Richard Harvey. However, he avers was no "testimony as to how [the officer] confirmed the identity of the driver and the driving record." Lee's Brief at 14-15.

The trial court opined: "This assignment of error is largely unintelligible to the undersigned. There was no prejudice. Defense counsel stipulated that "Richard Lee Harvey" and "Rick Lee" are the same person. . . . This is a frivolous issue." Trial Court Opinion, 1/16/24, at 12 (*citing* N.T., 9/18/23, at 226).

On appeal, Lee does not address, let alone refute, the trial court's analysis. The testimony that he cites — that Officer Roote believed the driver of the vehicle was Richard Harvey — was presented in the jury trial on the DUI charge. Lee's DUS charge, however, was tried separately and, as the trial court aptly point outs, at that trial his counsel not only acknowledged that Lee was previously known as Richard Harvey, but also presented a Florida certified name change in support. No relief is due on this claim.

Finally, Lee asserts "[t]he Commonwealth failed to show that Richard Harvey received notice from PennDot of his DUI suspension." Lee's Brief at 16.

We reiterate that the trial court found, according to the certified driving record, that notice of each license suspension was mailed to Lee. To the extent that PennDOT had an incorrect address for Lee, the trial court found

he had "a hand in perpetuating [any] error," as he should have informed PennDOT of any address change. DUS Opinion, 9/22/23, at 2. Furthermore, the trial court found that Lee's insistence that he did not receive notice, despite seven "lifetime" DUI convictions, was incredible. *Id*.

After review of the record, we conclude that no relief is due on Lee's claim that he did not receive appropriate notice. The trial court, sitting as finder of fact, was free to believe all, part, or none of the evidence, and we do not disturb its findings of fact. *See Juray*, 275 A.3d at 1047; *see also Giron*, 155 A.3d at 638.

As none of Lee's issues merit any relief, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/21/2024